## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

DEBORAH L. DANIEL,               )
      Plaintiff,               )
                      )
          v.               )     CAUSE NO.: 2:04-CV-465-PRC
                      )
JO ANNE B. BARNHART,               )
Commissioner of Social Security               )
Administration,               )
      Defendant.               )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 4], filed by the Plaintiff, Deborah Daniel, on November 10, 2004, and on a Social Security Opening Brief [DE 15], filed by Daniel on February 25, 2005.  The Plaintiff seeks judicial review of a final decision of the Defendant, the Commissioner of the Social Security Administration.  The review is sought due to the Commissioner's denial of Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.  For the following reasons, the Court denies the Plaintiff's request to reverse and remand the decision of the Commissioner.

## PROCEDURAL HISTORY

On September 27, 2002, Daniel filed an application for SSI benefits.  Daniel's request was initially denied and was then denied after reconsideration.  A request for a hearing was granted, and on June 10, 2004, a hearing was conducted.  The Administrative Law Judge ("ALJ") concluded that Daniel was not disabled in a decision dated July 24, 2004.  The decision included the following findings:

(1)     The claimant has not engaged in any disqualifying substantial gainful activity.

(2)     The claimant has the following medically determinable impairment: moderate osteopenia on the first femoral neck, TMJ, depression and anxiety.  The claimant's impairment significantly limits her ability to perform basic work activities.

(3)     The claimant's impairment [sic] not meet the requirements or equal the level of severity contemplated under any listing included in Appendix 1 to Subpart P, Regulation No. 4.

(4)     The claimant's complaints of disabling symptoms and limitations are not considered entirely credible for the reasons set forth in the body of this decision.

(5)     After carefully considering the entire record, including the claimant's allegations of disabling symptoms and limitations, a finding is warranted that the claimant's medically determinable impairments preclude the following work related activities: more than sedentary work requiring a sit/stand option; no more than occasional performance of the posturals; no climbing of ladders, ropes and scaffolds; no unprotected heights or dangerous moving machinery; and performance of no more than simple routine tasks.  Based on those limitations, the claimant's residual functional capacity is for a limited range of sedentary work.

(6)     The claimant is unable to perform any past relevant work.

(7)     The claimant born November 1, 1954, is currently 49 years old, which falls within the "younger (45 - 49)" category.

(8)     The claimant has completed the 10th grade in school, which is classified as a "limited" education.

(9)     The claimant has no past relevant work.

(10)    In view of the claimant's vocational characteristics and residual functional capacity as reported above, Medical-Vocational rule 201.18 serves as a framework for decision-making.  Although the claimant's limitations prevent the performance of the full range of sedentary work, there are still a significant number of jobs remaining that the claimant can perform.

(11)    The claimant is not under a "disability" for purposes of Title XVI of the Social Security Act.

R. at 20-21.  The ALJ determined that Daniel retained a residuary functional capacity ("RFC") for

a limited range of sedentary work.

2

As a result of the denial, Daniel filed a request for review of the hearing decision with the Appeals Council on August 16, 2004, and submitted additional evidence. By letter dated September 16, 2004, Daniel's request was denied by the Appeals Council. However, the Appeals Council made the additional evidence part of the record. As a result of the denial, the ALJ's decision of January 31, 2002, became the final decision of the Commissioner.

Daniel filed her Complaint in this Court on November 10, 2004, seeking a review of the final decision pursuant to 42 U.S.C. § 1383(c)(3). Daniel alleges that the Commissioner's denial of benefits was in accordance with neither the law nor the evidence. On January 28, 2005, the Commissioner filed an Answer and the Administrative Record. Daniel filed her Opening Brief on February 25, 2005, and the Commissioner's Response Brief followed on May 3, 2005. On May 11, 2005, Daniel filed her Reply Brief.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 43 U.S.C. § 405(g).

## FACTS

At the time of the hearing, Daniel was 49 years old, with an education through the tenth grade. She has worked in the past performing various cleaning or janitorial work. Daniel asserts she is no longer able to work because of chronic back pain, neck pain, carpal tunnel syndrome, pain in her left foot, depression, a panic disorder, and arthritis/osteoporosis.

### A.  Medical Evidence

Daniel began to experience back pain as early as 1998 when she consulted a doctor for treatment. The radiologist noted mild degenerative changes in Daniel's spine.  Daniel sought treatment again on March 1, 2000.   The radiology report of Daniel's thoracic spine showed a loss of disc space height and marginal spurring of multiple vertebral bodies.  Disc degenerative changes were noted at C4-C5 and C5-C6.

Further, in 2000, Daniel received treatment for pain in her right hand, which is her dominant hand.  Records show that she fractured her right-hand little finger and injured her joint extensor tendon in or about July 2000.  In September of 2000, Dr. Joseph Hecht, an orthopaedic specialist, examined Daniel's hand and indicated that she had a healed fracture at the base of the finger but continued to have dorsal angulation of the finger and some extensor lag.   Dr. Hecht also recommended that Daniel seek treatment from a hand surgeon because he was not sure the injury would respond to long-term splinting.

In June 2001, Daniel underwent an MRI for her low back pain.  Dr. Ivan Chermel noted the scan showed no significant abnormality other than facetal arthritic changes primarily at L4-5 and L5-S1.  In 2002, Dr. Feliciano Jimenez, Daniel's primary physician, completed the Indiana Family and Social Services Administration Determination of Disability form.  On this form, Dr. Jimenez noted that Daniel was disabled due to a number of conditions, including back pain, depression, and anxiety.

In December 2002, Dr. Roger Parks, a clinical psychologist, conducted a consultative examination.  Dr. Parks noted that Daniel is able to do some housework, including washing dishes, doing laundry, dusting and cooking.  Other activities consisted of talking on the phone, shopping,

4

watching television, reading, and performing community service. Due to Daniel's symptoms of low self-esteem, insomnia, and crying spells, Dr. Parks diagnosed her with dysthymic disorder. In addition, Dr. Parks established that Daniel suffered from a panic disorder that manifests itself as heart palpitations, shortness of breath, sweating, and trembling. Finally, Dr. Parks rated Daniel's Global Assessment of Function ("GAF") at 60, which indicates moderate, almost mild symptoms.

Also in December 2002, Dr. Teofilo Bautista conducted a consultative examination. Daniel complained of low-back pain that radiated to her hip, left foot pain, occasional difficulty opening jars, and hyperventilation when she thought about past experiences. Dr. Bautista reported that Daniel had muscle spasm and tenderness in her low back with limited foward flexion (70 degrees) and extension (20 degrees). He also noted she had a normal gait with no assistive device used, that she had normal general muscle strength, and good fine finger manipulative abilities. Dr. Bautista concluded that Daniel had chronic lower back pain, anxiety disorder, and a history of mild carpal tunnel syndrome in the right wrist.

Further, in the same month, Dr. Fressner, a State Agency psychological consultant, reviewed Daniel's records. Dr. Fressner concluded that Daniel's current mental state was not severely limited at that time.

On March 29, 2003, Daniel visited psychologist John Heroldt for a consultative mental evaluation for depression. At this visit, Daniel complained of crying spells, suicidal ideations, insomnia, lethargy, loss of interest in pleasurable activities, weight gain of twenty pounds in about one year, and worthless feelings. Daniel further stated that she suffered from anxiety symptoms, which included dyspnea, tachycardia, sweats, dizziness, headaches, and being panicked every day. Dr. Heroldt commented that Daniel was able to ambulate without difficulty and that her thoughts

were logical and coherent. After conducting psychological evaluations, Heroldt noted that Daniel had a below average memory and cognitive capacity. From these reports and his own observations, Heroldt concluded that Daniel suffered from Major Depressive Disorder, Panic Disorder, and Personality Disorder.

In April 2003, Daniel visited Dr. M. Zeitoun, a physician, for a consultative examination. Dr. Zeitoun noted that Daniel had a slow gait due to lower back pain, but that she was able to get off and on the examination table without assistance. Further, Daniel had a decreased range of motion in both hips and tenderness in her lower back and left foot, but she still had full muscle strength and good grip strength.

Medical records dated May 11, 2001, to March 28, 2003, detail several visits by Daniel to her physician, Dr. Jimenez, for treatment of symptoms of back and neck pain. On December 16, 2003, Dr. Jimenez wrote that Daniel was under his care due to a herniated disk as well as severe lower back pain, depression, gastroesophageal reflux, and osteoporosis. As a result of her complaints, diagnostic tests of the spine were ordered. For her chronic neck pain radiating to the right shoulder and right arm over the years, a December 18, 2003 MRI report of the cervical spine revealed disc herniation at C6-C7 causing compression of the thecal sac and nerve root on the right side, mild stenosis at C6-C7, compression of the thecal sac at C5-C6 level, and mild degenerative disc disease at C4-C5. Tests were also ordered for her lower back pain, and a November 15, 2003 x-ray report revealed degenerative changes in the mid and lower thoracic spine.

**B. Testimony**

*1. Deborah Daniel*

During the June 10, 2004 hearing, Daniel testified that she suffered from low back pain that made it difficult to sit for long periods of time and to drive.  She said that she is unable for sit for more than an hour.  In addition, Daniel commented that she is no longer able to be employed as a janitor due to the pain in her lower back, right hand, and left foot.  She explained further that she suffers from TMJ, GERD, osteoporosis, and arthritis and that these affect her ability to work because she is "just in a lot of pain, especially when it is raining or humid."  R. at 32.

Daniel commented that she visits Dr. Jiminez once a month and that her condition has worsened.  She admitted she cooks for herself, does laundry, and that she now lives alone.  But Daniel asserts she is unable to engage in any heavy housework.  A typical day for Daniel is taking the dog outside, conducting little chores, reading, watching television, and talking on the phone. Daniel notes that she lays down most of the day and only sits up to eat.  She smokes five cigarettes a day, but no longer drinks as she has been sober for three years.  Daniel explained she is capable of lifting a gallon of milk, sitting down to tie her shoes, and buttoning a button.  But she is unable to go up and down stairs due to the pain in her foot.

Upon questioning from the ALJ, Daniel commented that she suffers from a panic disorder that manifests itself in panic attacks everyday.  These panic attacks include chest pains and hyperventilation.  She also noted there have been times she has considered hurting herself and that she has been depressed.  Daniel observed that her depression stems from the death of her mother, the distance between herself and her father, deaths in the family at an early age, her three divorces, the stress of being a single parent, and other events in her life.  In addition, Daniel remarked she has

7

problems with both her energy and her concentration.  She is no longer seeing a psychologist or a psychiatrist, but Daniel has been taking Prozac prescribed by her family doctor.  Daniel commented that she has been crying a lot recently and, at one point during the hearing, broke down in tears.  Daniel also remarked that she is confused and worries a lot.  Also, she suffers from headaches that come everyday, which are treated by pain medication.  These headaches began six years ago when Daniel was diagnosed with TMJ.  Daniel attributes the headaches to TMJ, a concussion sustained ten years ago, and two mini-strokes.  Daniel also noted that she has a deviated septum and suffers from face numbness at times.

*2. Murray Daniel*

Daniel's son, Murray, also testified at the June 10, 2004 hearing.  He testified that Daniel always seems to be in pain because she will be "holding her hand or saying her back hurts or kind of limping."  R. at 38.  Murray also testified that Daniel is not as active as she once was as she can no longer "mow the lawn, go to the grocery store, be able to lift heavier things than what she can now."  R. 39.  He also commented that Daniel has difficulty sitting and that she has to get up and walk around.

## C.  Vocational Expert

Clifford Brady, the vocational expert who testified at the June 10, 2004 hearing, specializes in assisting injured workers in finding employment.  Brady concluded that Daniel's previous position in the janitorial field would be considered medium and unskilled work and that Daniel would be unable to return to this position. Further, Brady opined that a person with similar

limitations to Daniel would be able to hold a limited range of sedentary unskilled work requiring a sit/stand option, including hand packaging, order clerk, or information clerk.  However, a person with chronic pain that needs to rest two to three hours everyday would be unable to secure competitive employment.  Upon hearing that Daniel suffers from headaches everyday, cries frequently, and often gets confused, Brady changed his opinion to note that Daniel would have to seek jobs that are "far more repetitive, more routine type work, jobs that maybe didn't deal with the public as much, that type of thing."  R. at 47.  These jobs would include hand packing (1100 jobs), electrical assembly (1300 jobs) and mechanical assembly (1200 jobs).  Brady commented that, if Daniel is unable to perform even simple routine tasks, then she would be unable to find employment.


### D.  The ALJ's Decision

The ALJ applied the standard five-step analysis.  At step one, he found that Daniel had not engaged in any substantial gainful activity after the application date of this case.  At step two, the ALJ concluded that Daniel's impairments were severe; however, at step three, he concluded that Daniel's severe impairments do not meet or equal the level of severity of any of the Listings in Appendix 1 to Subpart P, Regulation No. 4.  At step four, the ALJ found that Daniel was unable to perform any past relevant work based on her residual functional capacity ("RFC").  Finally, at step five, he concluded that the Social Security Administration had met its burden of demonstrating that other jobs exist in significant numbers in the national economy that can be performed by Daniel.

### E.  Appeals Council Evidence

Daniel submitted additional evidence to the Appeals Council, which was added to the record. This additional evidence includes a certificate of professional care from Dr. George Tsoutsouris, additional radiology reports for Daniel's left foot and right hand, a letter from Dr. Jimenez, a prescription and receipt for a cane, and a letter from Daniel.

First, Dr. Tsoutsouris certified that Daniel was treated for an "undisplaced fracture of middle phalanx of 2nd toe." R. at 305.  Second, radiology reports from August 9, 2004, demonstrated that Daniel had an x-ray taken of her left foot and right hand.  The foot x-ray showed osteoarthritic changes in the joints of her left great toe, but that there was no fracture.  The hand x-ray demonstrated mild osteoarthritic changes in her joints.  Third, Daniel's physician, Dr. Jimenez, commented in a letter that Daniel no longer had the ability to sit, stand, or walk for any extended period and prescribed a cane for ambulation.  Dr. Jimenez opined that the Daniel has experienced a loss of strength in her hand, which has lead to the restricted use of her right hand.[1]  Finally, Daniel's letter contends that she was on pain medication the day of the hearing and was unable to drive herself to the hearing.  She contests the ALJ's findings that she was not in pain nor was she depressed the day of the hearing.  She wrote, "I wear a pain patch on my low back that my doctor prescribes every day.  I read that it seemed I wasn't in pain, and that was not true.  I also read that I didn't appear to be depressed.  That wasn't true either.  I cried during the hearing."  R. at 311.

---

[1] Dr Jimenez refers to a fracture of the left little finger in his report.  However, medical records indicate that Daniel fractured her right little finger.

10

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard.  *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).  If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act ("Act") and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy.  42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits.  20 C.F.R. § 416.920(a)(4).  The Seventh Circuit has summarized the sequence as follows:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant is capable of performing work in the national economy.  Under the five-part sequential evaluation process, "[a]n affirmative answer leads either to the next step, or, on Step 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled."  If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.

*Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001) (citations omitted) (alterations in original); *see also* 20 C.F.R. § 416.920(a)(4)(I)-(iv); *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).  At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite [his]

12

limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, *see Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995), whereas the burden at step five is on the ALJ, *see Zurawski*, 245 F.3d at 886.

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski*, 245 F.3d at 888. The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 995 (quoting *Scott v. Barnhart*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).


### ANALYSIS

Daniel argues (1) that the ALJ failed to accord controlling weight to the opinion of Daniel's treating physician and (2) that the ALJ failed to accurately consider and/or mischaracterized the medical evidence. In response, the Commissioner contends that the treating physician's opinion was conclusory and insufficient and, thus, was not deserving of significant weight. The Commissioner

13

also argues that the medical evidence demonstrated that Daniel was not completely disabled.  The Court will address each argument in turn.

## A.  Treating Physician

Daniel argues that the ALJ failed to give controlling weight to the opinion of her treating physician, Dr. Feliciano Jimenez, and neglected to recontact Dr. Jimenez to obtain further information.[2]  The Commissioner responds that the ALJ's findings did give some weight to Dr. Jimenez's opinion, but ultimately, that opinion was inconsistent with other significant evidence of record.  Further, the Commissioner notes that the ALJ only needs to recontact medical sources when the evidence presented is inadequate.  The Court finds that the ALJ gave proper deference to Dr. Jimenez's opinion and that the ALJ was not required to recontact Dr. Jimenez.

A treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 416.927(d)(2); *Boiles*, 395 F.3d at 426 (citing *Clifford*, 227 F.3d at 870); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).  "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances."  *Gudgel*, 345 F.3d at 470 (citing *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2)).  However, an ALJ is entitled to discount the medical opinion of a treating physician if inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability."

---

[2] Daniel argues separately that (1) "The ALJ failed to accord 'controlling weight' to the opinion of Dr. Jimenez, the only treating physician with whom Daniel had a long and continuing treatment relationship;" and (2) "In determining the Residual Functional Capacity (RFC) the ALJ erred in giving controlling weight to nontreating sources."  Pl. Br., pp. 10, 13.  The Court will treat these arguments contemporaneously.

*Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Dixon*, 270 F.3d at 1178; *Clifford*, 227 F.3d at 871) (quoting *Clifford*, 227 F.3d at 870) (internal quotation marks omitted).  The ALJ must discuss, at some level, how the evidence of record contradicts the treating physician's diagnosis.  *See Gudgel*, 345 F.3d at 470.

A plaintiff is not entitled to benefits "simply because her physician states that she is 'disabled' or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).  It is the Commissioner, not the treating physician, who decides whether a plaintiff is disabled.  *See id*.; 20 C.F.R. § 416.927(e)(1).  In addition, "an ALJ need[s] [to] recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled."  *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *see also* 20 C.F.R. § 416.912(e).  However, the Court should defer to the "reasoned judgment of the ALJ in deciding how much evidence to gather." *Griffith v. Callahan*, 138 F.3d 1150, 1153-54 (7th Cir. 1998) (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)).

In this case, the ALJ determined that Dr. Jimenez's December 16, 2003 letter pertaining to Daniel's condition was "quite conclusory, providing very little explanation of the evidence relied upon in forming that opinion." R. at 17.  In the aforementioned letter, Dr. Jimenez noted that Daniel suffered from a herniated disc along with severe low back pain syndrome, depression, gastroesophageal reflux, and osteoporosis.  Dr. Jimenez further opined that, "because of the above problems, she is permanently disabled and unable to do any gainful employment." R. at 283.  Daniel challenges the ALJ's assertion by noting his letter is well-supported and is consistent with substantial evidence in the record.  Citing the December 2003 MRI report of Daniel's spine that showed disc herniation, an x-ray report that revealed degenerative changes in her spine, and the

15

orthopaedic specialist's opinion that Daniel required the services of a hand surgeon, Daniel argues that the objective evidence is wholly consistent with Dr. Jimenez's conclusions.

Daniel sought treatment from Dr. Jimenez quite frequently for various ailments, which would lead to the proper designation of Dr. Jimenez as a treating physician. However, despite this label, the ALJ is not required to completely accept his conclusion without scrutiny. In the letter, Dr. Jimenez does not refer to any medical tests or records to support his conclusions. There is some evidence within the record of lower back pain and osteoporosis, but Dr. Jimenez fails to support his claims that these are fully disabling with any evidence. Merely listing medical conditions and a conclusion that Daniel is disabled is not enough to allot controlling weight to an opinion of a doctor. Though the letter may be consistent with some of the medical data, it does not automatically follow that the ALJ is required to rely exclusively on Dr. Jimenez's conclusion that Daniel is disabled and can no longer work.

In his decision, the ALJ properly set out all of the evidence that was inconsistent with Dr. Jimenez's opinion. For example, Dr. Jimenez's letter does not reference any problems with Daniel's right hand. Instead the ALJ relies on the statements of two consultative physicians who stated that Daniel had good grip strength and the ability for fine finger manipulative abilities. The ALJ also is correct in noting that Dr. Jimenez's conclusion that Daniel can no longer perform her past work is consistent with the record. This demonstrates that Dr. Jimenez's opinion was considered by the ALJ and credited to some extent, but that it was discounted when it was inconsistent with medical records. These records included consultative physician reports, radiology reports, hospital records, and psychological examination reports, as cited by the ALJ, all of which show that Daniel does suffer from lower back pain and some mental ailments. However, they also demonstrate that her

16

problems do not interfere with her ability to walk without assistance; her ability to get on and off an exam table without assistance; her thought processes, which were rational and coherent; or her ability to concentrate to read.  All of these medical records and reports are much more thorough and persuasive than Dr. Jimenez's list of symptoms and conclusory opinion that Daniel is disabled.  For these reasons, the ALJ was correct in discounting his opinion in favor of non-treating sources.

Daniel additionally contends that Dr. Jimenez should have been recontacted by the ALJ to gather further evidence.  However, the ALJ needs to do this only when the evidence presented is inadequate to prove or disprove a disability.  The record is replete with medical documents going back six years demonstrating the many ailments for which Daniel has sought treatment.  Dr. Jimenez submitted documents on two occasions at the request of the Social Security Administration.  These documents included test results, hospital records, and a letter from the treating doctor himself.  It is reasonable to conclude the ALJ thought the record to be complete and that nothing could be gained by additional requests of Dr. Jimenez.  In addition, the material presented by Dr. Jimenez was supplemented by statements by Daniel and consultative doctors all discussing Daniel's ailments.  Because the evidence considered by the ALJ is thorough, the Court defers to the judgment of the ALJ that it was unnecessary to recontact Dr. Jimenez.

## B.  Medical Evidence

Daniel contends that the ALJ mischaracterized and inaccurately considered the medical evidence presented in this case.  Specifically, Daniel argues that the ALJ incorrectly stated that she was not in pain during the hearing and that treatment controlled her symptoms and that the ALJ failed to consider Daniel's right-hand limitations.  Daniel cites medical evidence to support her

contentions.  However, this evidence alone is unpersuasive as the ALJ relies on the same evidence but arrives at a different conclusion.

As noted above, the court will uphold the ALJ's decision "so long as it is supported by substantial evidence in the record." *Clifford*, 227 F.3d at 869.  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt*, 395 F.3d at 744.  Further, The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 995 (quoting *Scott v. Barnhart*, 297 F.3d at 595).  However, "courts may not reverse an administrative law judge's decision on the basis of evidence first submitted to the Appeals Council . . ." *Eads*, 983 F.2d at 818.  This notion supports the policy that an ALJ "cannot be faulted for having failed to weigh evidence never presented to him." *Id*. at 817.

In the present case, the ALJ, by citing to the majority of the medical records presented prior to his decision, has demonstrated with substantial evidence that Daniel is not disabled for the purposes of the Act.  Noting her many symptoms, including back problems and mental disorders, the ALJ nevertheless concluded that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." R. at 16.  In her brief, Daniel focuses on enumerating evidence contained in the record and new evidence presented to the Appeals Council.  However, this argument ultimately fails for two reasons. First, Daniel is unable to demonstrate that the ALJ's decision was unreasonable or that he failed to consider or misconstrued evidence that would change the outcome of the case.  Daniel references, among other evidence, many reports denoting degeneration in her lower back and pain in her right hand.

However, the problem is not that the evidence was misconstrued or misunderstood by the ALJ, rather that Daniel disagrees with the conclusion reached by the ALJ based on this evidence. Once again, the ALJ's decision was reasonable in light of the evidence that was presented and the decision is supported by substantial evidence. Second, Daniel's reliance on the new evidence presented for the first time to the Appeals Counsel is misplaced as this Court is prohibited from considering such evidence when determining if the ALJ's decision was supported by substantial evidence. For that reason, the Court must make its determination based solely on the evidence presented to the ALJ.

The conclusion that Daniel is not considered disabled by the Social Security Administration is amply supported by the ALJ's recitation and contemplation of the many medical records, along with credibility determinations. All of the evidence presented in Daniel's brief was considered by the ALJ, including her right hand limitations and her mental state. Even if there are limited records pertaining to whether Daniel's back pain has been fully controlled, the ALJ's determination is still supported by sufficient medical reports demonstrating that she only had mild degeneration in her lumbar region, that she is still able to function without the assistance of a walker, and that she was able to get on and off an examination table without assistance, among other findings. All of this evidence has the effect of supporting the ALJ's reasonable judgment.

Further, the ALJ did consider Daniel's right hand limitations. Focusing on two non-treating source reports, the ALJ noted that Daniel did have good grip strength and fine finger manipulation, which included the ability to button a button, use a zipper, and pick up coins. The only dissenting opinion was stated by Dr. Jimenez, but this opinion was unsupported by any other medical evidence. Therefore, the ALJ's decision that Daniel would be able to hold a hand-packing, electrical assembly,

or mechanical assembly position was supported by the substantial evidence of record and remand is not appropriate.

### C.  Appeals Council Evidence and Sentence Six Remand

The record demonstrates that some of the evidence upon which Daniel relies appears for the first time in the record as part of the Appeals Council evidence, which is evidence submitted after the ALJ's decision and which was not before the ALJ as a basis for his decision.  Therefore, the Court cannot and does not consider this evidence that was not available for consideration by the ALJ when determining whether the ALJ's decision is supported by substantial evidence.  *See Eads v. Secretary of Dept. of Health and Human Servs.*, 983 F.2d 815, 817-18 (7th Cir. 1993).  Rather, the Court may only consider the new evidence upon a determination under sentence six of 42 U.S.C. § 405(g) for remand.  *Id*. at 818.

Sentence six of § 405(g) provides that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . . ."  42 U.S.C. § 405(g); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991); *Richmond v. Chater*, 94 F.3d 263, 268 (7th Cir. 1996).  The plaintiff bears the burden of demonstrating that remand is appropriate under sentence six.  *See Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993).  Evidence is new if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Sample*, 999 F.2d at 1144.  New evidence is material if there is a "reasonable probability" that the ALJ would have reached a different

disposition if presented with the new evidence. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997); *Sample*, 999 F.2d at 1144.

Daniel claims that the Appeals Council's refusal to consider additional material evidence is a mistake of law; therefore, the Court should remand the case for further consideration. However, Daniel fails to prove that the new evidence submitted is material. As noted above, the new evidence consists of a certificate of professional care by Dr. Tsoutsouris, who treated Daniel's broken toe, a radiology report noting that there have been "osteoarthritic changes" in her left foot, a radiology report noting that there have been "mild osteoarthtic changes" in her right hand and wrist, a letter from Dr. Jimenez, a prescription and receipt for a cane, and a letter from Daniel. The Court finds that there is not a reasonable probability that any of this evidence would change the ALJ's decision. The evidence presented merely mirrors what other reports in the record already show. Namely, that Daniel does suffer from lower back pain and pain in her right hand and wrist. But similar evidence was presented at the hearing and Daniel is still unable to demonstrate that her symptoms are more severe than what is found in the ALJ report or that she is unable to be employed in the jobs identified by the vocational expert. Therefore, the Court finds that remand under sentence six on the basis of the additional evidence is not appropriate.

## CONCLUSION

For the forgoing reasons, the Court finds that the ALJ's determination that Daniel is not disabled was supported by substantial evidence and the ALJ did not commit an error of law. Therefore, the Court **DENIES** the Social Security Opening Brief [DE 15]. The Court **REAFFIRMS** the ALJ's decision in all respects.

So ORDERED this 19th day of December, 2005.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:  All counsel of record